**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | |
| Plaintiff, | |
| **v.** | CIVIL ACTION NO.: 3:18-CV-1421 |
| **PAUL GILMAN,** **OIL MIGRATION GROUP, LLC,** **WAVETECH29, LLC, and** **GILMANSOUND, LLC** | **JURY TRIAL DEMANDED** |
| Defendants. | |

## REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS OR, ALTERNATIVELY, MOTION FOR MORE DEFINITE STATEMENT

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................ 1

II.    ARGUMENT ...................................................................................................... 1

    A.    THE COURT SHOULD DISMISS THE COMPLAINT FOR FAILING TO PLEAD WITH SUFFICIENT PARTICULARITY UNDER  RULE 9(b). .......................................................................................................... 1

        1.    The Complaint fails to allege with particularity that Gilman or his companies committed any fraud ...................................................... 2

            a.    The Complaint fails to specify "what" fraudulent conduct Defendants engaged in. ..................................................... 2

            b.    The Complaint fails to allege the "where" and "how" of the alleged fraud with particularity. ......................................... 4

        2.    The SEC's complaint fails to allege the proper mental state. ........................ 6

    B.    THE SEC SHOULD BE REQUIRED TO REPLEAD AND PROVIDE A MORE DEFINITE STATEMENT UNDER RULE 12(E). ................................. 10

III.    CONCLUSION ................................................................................................ 10

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Am. Cancer Soc. v. Cook*,
   675 F.3d 524 (5th Cir. 2012) ...............................................................................2

*Baxter v. Palmigiano*,
   425 U.S. 308 (1976).............................................................................................9

*Benchmark Elecs., Inc. v. J.M. Huber Corp.*,
   343 F.3d 719 (5th Cir. 2003) ...............................................................................2

*In re Enron Corp. Securities, Derivative & ERISA Litigation*,
   762 F. Supp.2d 942 (S.D. Tex. 2010) ..............................................................9, 10

*Farace v. Indep. Fire Ins. Co.*,
   699 F.2d 204 (5th Cir. 1983) ...............................................................................9

*High View Fund, L.P. v. Hall*,
   27 F. Supp. 2d 420 (S.D.N.Y. 1998)..................................................................8, 9

*Janvey v. Alguire*,
   647 F.3d 585 (5th Cir. 2011) ...............................................................................2

*Lefkowitz v. Turley*,
   414 U.S. 70 (1973)...............................................................................................9

*Lohr v. Gilman*,
   248 F. Supp. 3d 796 (N.D. Tex. 2017) ..............................................................1, 3

*Nathenson v. Zonagen Inc.*,
   267 F.3d 400 (5th Cir. 2001) ...............................................................................6

*R2 Invs. LDC v. Phillips*,
   401 F.3d 638 (5th Cir. 2005) ...............................................................................3

*Scritchfield v. Paolo*,
   274 F. Supp. 2d 163 (D. R.I. 2003)......................................................................9

*SEC v. Couch*,
   No. 3:14-CV-1747-D, 2014 WL 7404127 (N.D. Tex. Dec. 31, 2014)...................6

*SEC v. Farmer*,
   No. 4:14-cv-2345, 2015 WL 5838867 (S.D. Tex. Oct. 7, 2015) ...........................6

**TABLE OF AUTHORITIES** *(continued)*

**Page(s)**

*SEC v. Helms*,
  No. A-13-CV-01036 ML, 2015 WL 5010298 (W.D. Tex. Aug 21, 2015).........................6, 10

*SEC v. Kornman*,
  391 F. Supp. 2d 477 (N.D. Tex. 2005) ....................................................................9

*SEC v. Mapp*,
  240 F. Supp. 3d 569 (E.D. Tex. 2017)....................................................................6

*SEC v. Narayan*,
  No. 3:16-cv-1417-M, 2017 WL 4652063 (N.D. Tex. Aug. 28, 2017) .................................2, 6

*SEC v. Petros*,
  No. 3:10-CV-1178-M, 2012 WL 386731 (N.D. Tex. Feb. 6, 2012)....................................10

*SEC v. Smith*,
  No. C2-CV-04-739, 2005 WL 2373849 (S.D. Ohio, Sept. 27, 2005) ......................................8

*Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*,
  975 F.2d 1134 (5th Cir. 1999) .............................................................................2

*United States v. Hubbell*,
  530 U.S. 27 (2000)..........................................................................................9

*Velazquez v. El Pollo Regio IP, LLC*,
  No. 3:15-CV-03170-M, 2016 WL 3669876 (N.D. Tex. July 11, 2016)................................10

**Rules**

Fed. R. Civ. P. 9(b) ........................................................................ *passim*

Fed. R. Civ. P. 12(b)(6).................................................................... *passim*

Fed. R. Civ. P. 12(e) .............................................................................10

Paul Gilman ("Gilman), Oil Migration Group, LLC ("OMG"), WaveTech29, LLC

("WaveTech"), and GilmanSound, LLC ("GilmanSound") (hereinafter "Defendants") submit this

Reply Brief in Support of Defendants' Motion to Dismiss or, Alternatively, Motion for More

Definite Statement, and urge the Court to grant the Motion to Dismiss (ECF No. 17) due to the

SEC's repeated and continued pleading failures, as described below.

## I.      INTRODUCTION

In its Answer (ECF No. 18) to Defendants' Motion to Dismiss under Federal Rules of

Civil Procedure 12(b)(6) and 9(b), the SEC does little more than repeat the same, insufficient

allegations set forth in the First Amended Complaint (ECF No. 10) ("Complaint").  Indeed, the

response confirms the weakness of the original pleading, mistaking administrative convenience

for severely reckless and negligent conduct.  Further, the SEC relies on (and inaccurately cites)

another, unrelated civil action—one that notably did not even involve one of the defendants here,

GilmanSound—to support its theory.  Moreover, the motion to dismiss in that case, *Lohr v.

Gilman*, 248 F. Supp. 3d 796 (N.D. Tex. 2017) (Lindsay, J.), in fact was not denied as the SEC

alleges, but instead was denied in part.  Accordingly, despite appearing to rebut our Motion, the

SEC's response confirms that the Complaint is deficient in numerous ways and fails to meet the

required fraud standard under Rule 9(b).  Accordingly, the Complaint should be dismissed.

## II.      ARGUMENT

### A.      THE COURT SHOULD DISMISS THE COMPLAINT FOR FAILING TO PLEAD WITH SUFFICIENT PARTICULARITY UNDER  RULE 9(b).

The SEC repackages its allegations from the Complaint in its Answer, hoping that the

labels it assigned to allegations—"who, what, when, where, and how"—somehow will blind the

Court from a thorough analysis.  Ans. at 3-6.  But such repackaging does nothing to cure the fatal

defects of the Complaint, because the facts as alleged, and assumed to be true under this posture, are insufficient to meet the particularity required by Rules 12(b)(6) and 9(b).

1.      **The Complaint fails to allege with particularity that Gilman or his companies committed any fraud.**

As to all entities, but GilmanSound in particular, both the Complaint and the SEC's response to the Motion still wholly fail to make a colorable claim of fraud.  As both parties agree, Rule 9(b) requires particularity as to the  "who, what, when, where, and how" of the defendant's alleged fraudulent conduct.  *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003) (observing that Rule 9(b) "requires allegations of the particulars of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby") (quoting *Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.,* 975 F.2d 1134, 1139 (5th Cir. 1999)).  Here, the what, where, and how relating to the alleged fraud are notably missing.

a.      **The Complaint fails to specify "what" fraudulent conduct Defendants engaged in.**

The Complaint repeatedly mischaracterizes the nature of Defendants' conduct.  For instance, the SEC's characterization of some of Gilman's conduct, such as the "Ponzi-like" payment, is simply wrong.  "A Ponzi scheme is a 'fraudulent investment scheme in which money contributed by later investors generates artificially high dividends or returns for the original investors, whose example attracts even larger investments.'"  *Am. Cancer Soc. v. Cook*, 675 F.3d 524, 527 (5th Cir. 2012) (quoting *Janvey v. Alguire*, 647 F.3d 585, 597 (5th Cir. 2011)).  As this Court recently held in *SEC v. Narayan*, No. 3:16-cv-1417-M, 2017 WL 4652063, at *11 (N.D. Tex. Aug. 28, 2017), the mere fact that the defendants there had "used funds from a later investor to pay an earlier investor does not, in and of itself, establish deceptive conduct."  It noted that "Ponzi-like payments . . . do not rise to the level of independently actionable deceptive conduct

to support allegations of scheme liability." *Id.*  Even assuming as true (for the purposes of a Rule 12(b)(6) motion) that Gilman used funds from one investor to cash out an earlier investor, Compl. ¶ 29, such an allegation cannot support a colorable securities violation.  Indeed, the SEC's use of the term "Ponzi" seems nothing more than inflammatory here.  Most telling is the total absence of facts in the Complaint about whether or how Gilman made any such payment to deceive other investors about the true state of his business, or how and when he might have lured additional investors as a result.  *See id.*  Thus, that allegation fails on its own merits.

Beyond that allegation, the SEC makes a number of logical leaps that involve legal conclusions, which are not given effect in rebutting a motion to dismiss.  *See Lohr*, 248 F. Supp. 3d at 805 (observing that "a court is not to strain to find inferences favorable to the plaintiff and is not to accept conclusory allegations, unwarranted deductions, or legal conclusions") (citing *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005)).  For instance, the SEC concludes that Gilman falsely represented that OMG "has the exclusive right to use and has licensed non-asset IP technology which affects oil viscosity and current oil recovery procedures" because "OMG has produced no record of an exclusive right to use or of licensing the purported IP technology." Ans. at 8 (citing Compl. ¶ 37).  In other words, the SEC assumes a fact and considers it sufficient to meet the Rule 9(b) standard simply because it was unable to find any contrary facts.  But the insufficiency of the SEC investigation should ***weigh against the Commission***, not the defendant. And the dearth of evidence is not itself evidence of wrongdoing—instead it is evidence of ***the lack of evidence***.

The Complaint does this again with Gilman's claim concerning lab results, which the SEC says was misleading because OMG ***has not produced records***.  Again, the SEC shifts the burden of its investigation to Gilman and asks this Court to burden Gilman with a lawsuit simply

because the SEC's investigation failed to uncover any real acts of wrongdoing.  Gilman was not

required to produce anything to the SEC.  And certainly the SEC, in some self-provided

authority for unilateral judgment, cannot try to make up for the laziness of its pre-complaint

review by asking the Court to presume such documents exist in order to support a securities

violation.  Such a presumption is illogical, unwarranted, and improper at this early stage.  And it

certainly cannot be relied upon to defeat a Motion to Dismiss.

As to GilmanSound, the SEC repeats the allegations of Gilman's alleged

misappropriation of investor funds—in a mere three paragraphs to support a finding of fraud.

Compl. ¶¶ 40-42.[1]  The Complaint only calls out one specific investor from California, where the

SEC makes the same allegations of misappropriation.  *Id.* ¶ 40.  It simply is not clear which

investors' funds were deposited into the GilmanSound bank account or why they were misused

as the Complaint seeks to lump them together.

Given that the Complaint fails to allege with particularity what fraud Gilman committed

against his investors, the SEC's claims must be dismissed for failure to state a claim.

> **b.      The Complaint fails to allege the "where" and "how" of the alleged fraud with particularity.**

The SEC's response to the Motion relies on the Complaint's allegations that Gilman and

his companies solicited funds from investors through "emails, investment contract documents,

and power point presentations" and "used his personal bank accounts and company bank

accounts to take in investor funds, which then he misappropriated . . . to fund his lifestyle in Las

Vegas and California."  Ans. at 5-6.  More specifically, the Complaint alleges that Gilman used

the funds provided from the investors described in paragraphs 24-27 on "luxury Las Vegas

---

[1]  This stands in marked contrast to the 24 paragraphs that the SEC devotes to alleging that
OMG and WaveTech were sham entities.

hotels, restaurants, designer clothing, airlines flights, [and] home furnishings" and made the ATM withdrawals from Las Vegas casinos.  Compl. ¶ 28.  Again, the SEC's response is leaping to unwarranted conclusions.  As the Complaint notes, Gilman resides in Las Vegas, *id.* ¶ 8; his company, GilmanSound LLC, is headquartered in Nevada, *id.* ¶ 11; and in fact, he lived in a unit in The Palm Hotel during portions of the time period of the allegations in the Complaint.  But these facts alone are not extraordinary and the SEC fails to explain why they are.  The Complaint fails to explain how a Las Vegas resident withdrawing cash from a Las Vegas ATM is anything but ordinary—let alone how that fact might support an allegation of fraud.  Without more, Gilman is forced to defend everyday conduct—who doesn't withdraw cash from an ATM in their hometown and near their home?

Without any detail or support the Complaint assumes that Gilman's expenditures were personal expenses, unrelated to Gilman's work.  But again, the Complaint alleges that Gilman lives in Las Vegas—so where is the particularity as to how/when/why his travel to reach investors across the country or his meals eaten during the work day are not legitimate business expenses?  Without pleading any detail as to why such conduct is illegal, the Complaint fails to adequately inform and fails to meet the standard of Rule 9(b).  At bottom, the SEC does not plead these facts because the SEC does not know these facts.  And it is not enough to survive, as they say, on a "wing and a prayer."  In sum, the SEC cannot second-guess Gilman's expenses and spending habits, and they certainly cannot simply presume a securities violation because they lack evidence to actually support a securities violation and do not have sufficient and particular facts to state in the Complaint.  Accordingly, the SEC has not met its required burden to demonstrate fraud as alleged in the Complaint.

2.      **The SEC's complaint fails to allege the proper mental state.**

Although the SEC is correct to observe that it is not subject to the heightened pleading standards of the PSLRA, it still must show scienter for claims brought under Section 17(a)(1) of the Securities Act, Section 10(b) of the Exchange Act, and Rule 10b-5 and negligence for claims brought under Sections 17(a)(2) and 17(a)(3). *Narayan*, 2017 WL 4652063, at *2.[2]  Severe recklessness includes "highly unreasonable omissions or misrepresentations that involve not merely simple or even inexcusable negligence, but an extreme departure from the standards of unreasonable care, and that present a danger of misleading buyers or sellers which is either known to the defendant or is so obvious that the defendant must have been aware of it." *SEC v. Couch*, No. 3:14-CV-1747-D, 2014 WL 7404127, at *6 (N.D. Tex. Dec. 31, 2014) (quoting *Nathenson v. Zonagen Inc.*, 267 F.3d 400, 408 (5th Cir. 2001)).

First, the SEC's Response fails to direct this Court to any colorable showing of scienter or even negligence against GilmanSound in the Complaint.  In section II.B of its Answer, the SEC repastes 13 paragraphs from the Complaint to demonstrate that Gilman acted with scienter. It then cites to this Court's decision in *Lohr* and asserts that the Defendants ignored it, before

---

[2]  Claims brought under Rule 10b-5 and Sections 17(a) are generally treated the same.  *See SEC v. Farmer*, No. 4:14-cv-2345, 2015 WL 5838867, at *12 (S.D. Tex. Oct. 7, 2015) (quoting *SEC v. Helms*, No. A-13-CV-01036 ML, 2015 WL 5010298, at *1 (W.D. Tex. Aug 21, 2015)).  The only operative difference between the two kinds of claims is that "Section 17(a) merely extends Rule 10b-5 liability to cover both buyers and sellers, offering and selling securities."  *SEC v. Mapp*, 240 F. Supp. 3d 569, 586 (E.D. Tex. 2017).  As the U.S. District Court for the Eastern District of Texas observed, "Section 17(a) does not give the Commission carte blanche to prescribe liability where Rule 10b-5 falls short."  *Id.*

To the extent the SEC argues that the Motion did not "address the SEC's Negligence Claims," Ans. at 13, all of the arguments made within the Motion apply with equal force to the SEC's negligence claims, given that the Motion contains arguments focused both on the lack of scienter in the SEC's Complaint and the factual pleading defects that would be applicable to any purported Section 17(a) violations.

finally concluding that "Gilman's scienter is imputed to OMG, WaveTech, and GilmanSound, which he controls." Ans. at 9. This argument is unavailing. First, GilmanSound was not a named defendant in *Lohr*.[3] In fact, the term "GilmanSound" does not appear in the opinion at all. It is incongruous for the SEC to recite 13 paragraphs from the Complaint, overwhelmingly focused on the solicitations for and operations of OMG and WaveTech, assert that Defendants have ignored *Lohr*, and then turn around and ignore the fact that GilmanSound was never part of that litigation while imputing those facts to the company simply because it is Gilman's company. This section of the Answer fails to make an independent, affirmative case that GilmanSound acted with the requisite scienter.

Second, and more broadly, the SEC's response asserts that Gilman knew "that he was lying to investors about how he used investor funds, he knew he was comingling and misappropriating investor funds for his personal use and to make one or more Ponzi payments, he knew he was making false guarantees to investors about the profitability and safety of their investments, he knew he was overstating the status of the technology, and he knew he was selling an equity interest in OMG before it was even formed." Ans. at 9. Yet this argument is supported only by the very conclusory allegations it makes—circular and insufficient, at bottom.

The SEC also alleges that assertions concerning Gilman's "honest belief" about the promise of his sonication technology "miss the point in the first instance." *Id.* at 10. But this is the entire point. The SEC argues that its allegations do not merely rest on the potential of his technology, but rather on issues of "current fact (e.g. the technology was independently tested, the technology has been licensed)" and Gilman's alleged misrepresentations. *Id.* To that end,

---

[3] The named defendants included Gilman, OMG, WaveTech, Raymond McGlamery, Frederick Minton, and Marlane Minton.

the SEC faults Gilman for not following the process that *the SEC* apparently believes he *should have followed*.  The SEC ignores the fact that these investments invested in *Gilman himself*, who genuinely saw OMG and WaveTech as administrative conveniences toward the same end— the development and implementation of sound technology to improve oil flows.  The Complaint's conclusions that Gilman "knew" that this technology could not be easily or effectively applied to the oil industry and "knew" that he was making false guarantees about the profitability and safety of the investments he was receiving are unsupported and insufficient to support the pleading requirements of scienter.

Recognizing that the Complaint relies only on inferences of scienter, the SEC cites to an unpublished opinion from the U.S. District Court for the Southern District of Ohio.  *SEC v. Smith*, No. C2-CV-04-739, 2005 WL 2373849 (S.D. Ohio, Sept. 27, 2005).  First, the fact that the SEC relies on an out-of-circuit, unpublished, and non-controlling opinion is telling.  The SEC's response provides no controlling precedent that using investor funds for certain personal expenses automatically raises an inference of scienter.  For instance, the U.S. District Court for the Southern District of New York in *High View Fund, L.P. v. Hall*, 27 F. Supp. 2d 420, 427 (S.D.N.Y. 1998) concluded that the plaintiffs' allegations that the defendants spent approximately $125,000 of investor funds (out of $1,725,000 in total investments) on personal expenses one year after their investment was "simply too far removed from plaintiffs' solicitation of investments through the Offering Memorandum to create the requisite inference of scienter."  The court specifically noted that "[a] contrary result would eviscerate the protections afforded by Rule 9(b), as any shareholder could parlay a claim for misuse of corporate assets into one for securities fraud."  *Id.* at 427-28; *see also Scritchfield v. Paolo*, 274 F. Supp. 2d 163, 184 (D. R.I. 2003) (observing that plaintiffs' allegations that the Defendants' SEC filings were

misleading because they did not disclose that corporate losses were in part due to payments of defendants' personal expenses, excessive spending on office space, and excessive salaries were "not actionable as a matter of law . . . [because] they represent precisely the type of naked allegations of corporate mismanagement that are not proscribed by the securities laws").

Finally, the SEC makes much of the fact that Gilman asserted the Fifth Amendment privilege against self-incrimination during the SEC's investigation, citing to this Court's decision in *SEC v. Kornman*, 391 F. Supp. 2d 477, 494-95 (N.D. Tex. 2005) (citing *Farace v. Indep. Fire Ins. Co.*, 699 F.2d 204, 210 (5th Cir. 1983)). While the Court may make an adverse inference concerning a civil defendant's refusal to testify, "the trier of fact is not required to draw a negative inference." *In re Enron Corp. Securities, Derivative & ERISA Litigation*, 762 F. Supp. 2d 942, 1017 (S.D. Tex. 2010) (citing *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976)). In *Baxter*, the Supreme Court noted that its line of cases hold that "the Fifth Amendment 'not only protects the individual against being involuntarily called as a witness against himself in a criminal prosecution but also privileges him not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings.'" *Baxter*, 425 U.S. at 316 (quoting *Lefkowitz v. Turley*, 414 U.S. 70, 77 (1973)). Similarly, "the act of producing documents in response to a subpoena may have a compelled testimonial aspect" where "the witness would admit that the papers existed, were in his possession or control, and were authentic." *United States v. Hubbell*, 530 U.S. 27, 36 (2000). The Court should exercise its discretion to protect Gilman's privilege against self-incrimination, but even if the Court were to decide, in its discretion, to make an adverse inference, it is not dispositive. *See Helms*, 2015 WL 5010298, at *12, n.22 (noting that the SEC clarified that "it is not [its] position that an adverse inference alone is sufficient for summary judgment"); *see also*

*In re Enron Corp.*, 762 F. Supp. 2d at 961 (noting that "[a] proper and timely assertion of the Fifth Amendment privilege against self-incrimination, even at the pleading stage, can preclude the operation" of requests for admission under Rule 8(b)(6)).

**B.    THE SEC SHOULD BE REQUIRED TO REPLEAD AND PROVIDE A MORE DEFINITE STATEMENT UNDER RULE 12(E).**

Given the sparsity of the allegations, if the Court chooses not to dismiss the entire action, Defendants renew their call for the SEC to amend the Complaint to provide appropriate notice to Defendants of the allegations against them.  Federal Rule of Civil Procedure 12(e) provides that a party "may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e).  The responding party "may employ Rule 12(e) to enforce the minimum requirement of Rule 8's notice pleading," but may not use the Rule as a substitute for discovery.  *Velazquez v. El Pollo Regio IP, LLC*, No. 3:15-CV-03170-M, 2016 WL 3669876, at *4 (N.D. Tex. July 11, 2016).  In pleadings brought under Rule 9(b), "[a] party may also rely on Rule 12(e) to challenge the sufficiency of a complaint under Rule 9(b)." *SEC v. Petros*, No. 3:10-CV-1178-M, 2012 WL 386731, at *2 (N.D. Tex. Feb. 6, 2012).

The amended effort should contain the additional details noted above to help provide Defendants with appropriate notice of the allegation against them.

### III.    CONCLUSION

The Court should dismiss the SEC's Complaint against the Defendants because its allegations do not satisfy the pleading standards under Rule 12(b)(6) and Rule 9(b).  In the event that this Court does not dismiss the Complaint, Defendants request that the Court require a more definite statement from the SEC under Rule 12(e).

**WHEREFORE**, Defendants respectfully submit that the Court should enter an Order dismissing the SEC's Complaint pursuant to Fed. R. Civ. P. 12(b) and Fed. R. Civ. P. 9(b) or, alternatively, requiring a more definite statement from the SEC under Fed R. Civ. P. 12(e).

DATE:   November 2, 2018

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

By: */s/ Robert C. Blume*_____
Robert C. Blume, SBN 24107184*
Timothy M. Zimmerman, CO Bar No. 42425*
1801 California Street
Suite 4200
Denver, CO  80202-2642
Telephone: 303.298.5700
Facsimile:  303.298.5907
Attorneys for **PAUL GILMAN, OIL MIGRATION GROUP, LLC, WAVETECH29, LLC, and GILMANSOUND, LLC.**

* Applications for admission pending.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 2nd day of November, 2018, I caused a copy of the foregoing REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS OR, ALTERNATIVELY, MOTION FOR MORE DEFINITE STATEMENT to be filed with the Clerk of the Court for the Northern District of Texas, Dallas Division, by using the CM/ECF system which will send a notice of electronic filing to all CM/ECF participants.

*/s/ Timothy M. Zimmerman*
Timothy M. Zimmerman