IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** § § § | | |
| Plaintiff, § § | | |
| v. § § | Civil Action No. **3:18-CV-1421-L** | |
| **PAUL GILMAN; OIL MIGRATION GROUP, LLC; WAVETECH29, LLC; and GILMANSOUND, LLC,** § § § § § | | |
| Defendants. § | | |

## MEMORANDUM OPINION AND ORDER

Before the court is Plaintiff Securities and Exchange Commission's ("SEC") Motion for Remedies and for Entry of Final Judgment as to Defendants Paul Gilman, Oil Migration Group, LLC, Wavetech29, LLC, and GilmanSound, LLC ("SEC's Motion") (Doc. 42), filed October 21, 2020. Instead of responding to the SEC's Motion, Defendants, on November 18, 2020, filed a "Motion to Stay the SEC Proceedings Pending [Resolution of the] Parallel Criminal Case" against Mr. Gilman in the Central District of California ("Motion to Stay") (Doc. 44). The Motion to Stay is opposed by the SEC.

After considering the parties' motions; briefs; evidence; the record in this case, including the Consents (Docs. 36-1 through 36-4) executed by each Defendant and the Consent Judgments entered against Defendants (Docs. 38-41), which the court **incorporates by reference** herein; and the record in Mr. Gilman's related criminal case, the court **grants in part and denies in part** Defendants' Motion to Stay (Doc. 44); and **grants** the SEC's Motion (Doc. 42).

**Memorandum Opinion and Order – Page 1**

I.      **Factual and Procedural Background**

The SEC brought this civil enforcement action against Paul Gilman ("Mr. Gilman"), Oil Migration Group, LLC ("OMG"), Wavetech29, LLC ("WaveTech"), and GilmanSound, LLC ("GilmanSound") (collectively, "Defendants") on June 4, 2018, for alleged violations of the Securities Act of 1933 ("Securities Act") and the Securities Exchange Act of 1934 ("Exchange Act"). In its First Amended Complaint ("Complaint"), filed July 27, 2018, Plaintiff asserts three causes of action for alleged: (1) violations of sections 17(a)(1), (a)(2), and (a)(3) of the Securities Act against all Defendants; (2) violations of section 10(b) of the Exchange Act and related Rule 10b-5 against all Defendants; and (3) aiding and abetting violations under section 17(a)(1) of the Securities Act, section 10(b) of the Exchange Act, and Rule 10b-5(b) against Mr. Gilman. The SEC's claims arise from the allegedly false and misleading statements and omissions made by Mr. Gilman to investors of OMG, WaveTech, and GilmanSound (collectively, "Entity Defendants"), which were created and controlled by Mr. Gilman. As herein explained, Defendants have agreed that the allegations in the Complaint shall be accepted as and deemed true by the court for purposes of ruling on the SEC's Motion.

The statements, omissions, and related conduct are alleged to have occurred between 2013 and 2016 and concern the development of and viability of soundwave technology, the profitability of and business prospects for the technology, and other matters concerning the Entity Defendants. In its First Amended Complaint, the SEC summarizes Defendants' conduct that forms the basis of this action as follows:

> 1. Gilman, through entities he controls [OMG, WaveTech, and GilmanSound], defrauded investors in securities offerings related to his purported development of soundwave technology. Gilman, who claims to be a music visionary, has launched a series of largely unsuccessful business ventures in the sound and music industry.

**Memorandum Opinion and Order – Page 2**

> During the relevant period, Gilman raised money from investors for GilmanSound, which he claimed would use soundwave technology to optimize sound systems in sport stadiums. GilmanSound began as a real business, but when it failed to perform, Gilman lied to investors about his use of the offering proceeds and misappropriated investor funds.
>
> 2. Touting GilmanSound and his purported expertise with soundwaves, Gilman moved outside the sound and music industry and raised money from investors for two oil and gas ventures—OMG and WaveTech. Gilman told investors that he would use their money to test, validate, further develop, and license his purported soundwave technology for use in oil-and-gas industry applications. Although Gilman has no apparent experience in the oil and gas industry, he claimed OMG and WaveTech would revolutionize the industry by using soundwave technology to lower the viscosity of oil and enhance water separation and purification processes involved in oil and gas exploration and production.
>
> 3. In truth, OMG and WaveTech were sham enterprises that operated as fraudulent vehicles for Gilman to solicit, receive, and misappropriate investor funds. Gilman spent substantially all of the money he raised from investors on personal expenses and other nonbusiness items, such as luxury Las Vegas hotels, restaurants, designer clothing and home furnishings, large cash withdrawals at casino ATMs, and, in at least one instance, a Ponzi payment to an earlier investor. Gilman also made multiple misstatements and omissions to investors about the status of the purported soundwave technology and the use of investor funds.
>
> 4. From 2013 through 2016 (the "Relevant Period"), Defendants raised at least approximately $3.3 million from approximately 40 investors located in Texas and other states. That money is gone, and the investors (excluding Ponzi payments) received nothing in return.
>
> 5. By reason of their misconduct, Defendants violated the antifraud provisions of the federal securities laws, specifically Section 17(a) of the Securities Act . . . [15 U.S.C. § 77q] and Section 10(b) of the . . . Exchange Act . . . [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

Pl.'s Am. Compl. 1-2. The SEC, therefore, contended that "Defendants should be permanently enjoined from violating these provisions of the securities laws, required to disgorge all ill-gotten gains with prejudgment interest, and ordered to pay appropriate civil penalties." *Id.* at 2-3. On October 1, 2018, Defendants filed their Motion to Dismiss or, Alternatively, Motion for More Definite Statement (Doc. 17), which the court denied on September 26, 2019.

**Memorandum Opinion and Order – Page 3**

On March 3, 2020, Plaintiff filed its Unopposed Motion for Entry of Judgment Against Defendants (Doc. 36). In support, Plaintiff submitted signed Consents for each Defendant (Docs. 36-1 through 36-4). In the Consents, Defendant, among other things, waived their right to a jury trial and stipulated that—for purposes of any motion by the SEC seeking entry of an order of disgorgement of ill-gotten gains, prejudgment interest on such gains, and the imposition of civil penalties under section 20(d) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. § 77t(d) and section 21(d)(3) of the Securities Exchange Act ("Exchange Act"), 15 U.S.C. § 78u(d)(3)—"the allegations of the Complaint shall be accepted as and deemed true by the [c]ourt," and they are precluded from arguing that they did not commit the federal securities violations alleged in the Complaint.[1] Doc. 36-1. In addition, Defendants agreed that, in ruling on an such motion by the SEC, the court could determine the issues raised in the motion based on any evidence submitted without regard to the summary judgment standard under Federal Rule of Civil Procedure 56(c). Defendants also waived "the entry of findings of fact and conclusions of law" under Federal Rule of Civil Procedure 52.

On March 4, 2020, the court entered an order (Doc. 37) granting the SEC's Unopposed Motion for Entry of Judgment Against Defendants and entered the agreed Consent Judgments (Docs. 38-41) against each Defendant, which incorporated Defendants' Consents; permanently enjoined Defendants and others on behalf of Defendants, from violating section 17(a) of the Securities Act; and ordered Defendants to pay disgorgement of ill-gotten gains, prejudgment

---

[1] Defendants' Consents and corresponding Consent Judgments refer to "the Complaint," which the court construes to mean the live pleading as of the date Plaintiff filed its Unopposed Motion for Entry of Judgment Against Defendants (Doc. 36) on March 3, 2020. As of this date, Plaintiff's First Amended Complaint (Doc. 10), which was filed July 27, 2018, was the live pleading.

**Memorandum Opinion and Order – Page 4**

interest on such gains, and civil penalties in an amount to be determined by the court upon motion by the SEC.

Several months later, the parties filed their respective motions that are pending before the court. As noted, Defendants did not file a response to the SEC's Motion. They, instead, moved to stay the proceedings in this case to delay the court's ruling on the SEC's Motion pending resolution of Mr. Gilman's criminal case No. 8:20-CR-167-DOC that was filed on November 2, 2020, in the Central District of California, shortly before Defendants filed their Motion to Stay in this case. In the criminal case, Mr. Gilman is charged with engaging in a scheme to defraud investors in violation of 18 U.S.C. § 1343, the same type of conduct that is the basis for this civil action by the SEC against Mr. Gilman and the three companies he created.

## II.     Defendants' Motion to Stay

Defendants request that the court stay the proceedings in this case for purposes of delaying a ruling on the SEC's Motion until after Mr. Gilman is sentenced in his criminal case. When Defendants filed their Motion to Stay on November 20, 2020, they indicated that Mr. Gilman's criminal case would be resolved in the near future because the parties had entered a plea agreement. In support of the request to stay this case, Defendants rely primarily on *SEC v. First Fin. Grp., Inc.*, 659 F.2d 660, 666 (5th Cir. 1981), and *United States v. Little Al*, 712 F.2d 133, 136 (5th Cir. 1983), for the proposition that district courts have authority to stay civil proceedings while a parallel criminal action is pending. Defendants also note that the Fifth Circuit in *First Financial Group* "held that the district court erred by failing to stay a civil libel action pending the outcome of a related criminal investigation and potential prosecution or the running of the applicable statute of limitations after the plaintiff had validly claimed his fifth amendment privilege in response to

the defendant's discovery requests and had sought a protective order staying the civil suit." Defs.' Mot. (quoting *First Fin. Grp., Inc.*, 659 F.2d at 666). The SEC opposes Defendants' Motion to Stay and filed a response in opposition to the motion.

### A.     Legal Standard

"When a defendant in a civil case is facing criminal charges, a district court may, in its discretion, stay the civil action." *United States ex rel. Gonzalez v. Fresenius Med. Care N. Am.*, 571 F. Supp. 2d 758, 761 (W.D. Tex. 2008) (citing *United States v. Kordel*, 397 U.S. 1, 12 (1970); *see also In re Ramu Corp.*, 903 F.2d 312, 318 (5th Cir. 1990) ("The stay of a pending matter is ordinarily within the trial court's wide discretion to control the course of litigation."). The district court's authority to issue a stay is "incidental to the power inherent in every court to control the disposition of the causes on its docket." *Landis v. North Am. Co.*, 299 U.S. 248, 254 (1936).

The Fifth Circuit in *First Financial Group* explained that there is "no general federal constitutional, statutory, or common law rule barring the simultaneous prosecution of separate civil and criminal actions by different federal agencies against the same defendant involving the same transactions." *Id. First Financial Group* further explained that "[p]arallel civil and criminal proceedings instituted by different federal agencies are not uncommon occurrences because of the overlapping nature of federal civil and penal laws," and that "[t]he simultaneous prosecution of civil and criminal actions is generally unobjectionable because the federal government is entitled to vindicate the different interests promoted by different regulatory provisions even though it attempts to vindicate several interests simultaneously in different forums." *Id.* at 666-67.

Moreover, the imposition of a stay necessarily "contemplates special circumstances and the need to avoid substantial and irreparable prejudice," *Little Al*, 712 F.2d at 136 (citation

omitted); *First Financial Grp.*, 659 F.2d at 668 (citations omitted). As a result, "it is the rule, rather than the exception that civil and criminal cases proceed together." *Fresenius Med. Care N. Am.*, 571 F. Supp. 2d at 761 (citation and internal quotation marks omitted). The party seeking a stay "bears the burden of establishing its need." *Clinton v. Jones*, 520 U.S. 681, 708 (1997).

In determining whether "special circumstances" warrant a stay, a court must measure the relative weights of competing constitutional and procedural interests. *See Landis*, 299 U.S. at 254-55. District courts in the Fifth Circuit have found the following factors relevant in determining whether a stay is warranted:

> (1) the extent to which the issues in the criminal case overlap with those presented in the civil case; (2) the status of the criminal case, including whether the defendants have been indicted; (3) the private interests of the plaintiff[] in proceeding expeditiously, weighed against the prejudice to plaintiff[] caused by the delay; (4) the private interests of and burden on the defendants; (5) the interests of the courts; and (6) the public interest.

*Alcala v. Texas Webb Cnty.*, 625 F. Supp. 2d 391, 398-99 (S.D. Tex. 2009) (citing cases).

**B.    Discussion**

The parties disagree whether consideration of the foregoing factors weighs in favor of staying the proceedings in this case. The court concludes that they do not warrant a further stay or delay of the proceedings in this case.

As a preliminary matter, *First Financial Group* does not support Defendants' requested stay because, contrary to their assertion, the Fifth Circuit in that case affirmed the district court's denial of a stay and rejected the appellant's argument that the district court erred in not staying the SEC's civil action once a federal grand jury began its criminal investigation of the same transactions. *First Fin. Grp.*, 659 F.2d at 663, 665-69. The holding referenced by Defendants is actually the holding in *Wehling v. Columbia Broadcasting System*, 608 F.2d 1084, 1086 (5th Cir.

1979), which the court in *First Financial Group* found distinguishable. *Id.* at 668. *Wehling* is also distinguishable from this case.

### 1. Overlap Between Cases and Status of Criminal Case (Factors One and Two)

The issues and misconduct in this case overlap *to some extent but not in all respects* with those in Mr. Gilman's criminal case. Unlike *Wehling*, however, Defendants' Motion to Stay does not raise any Fifth Amendment privilege concerns. To the extent Mr. Gilman had any such concerns, his recent guilty plea in the criminal case negates that concern. According to the docket sheet in the criminal case, a plea agreement was entered on October 28, 2020, and filed on November 2, 2020. Subsequently, however, Mr. Gilman, on February 16, 2021, pleaded not guilty to all counts charged and the case was set for trial. On July 26, 2021, after a few continuances, Mr. Gilman had a change of heart and pleaded guilty to Count 1 of the Information charging him with violating 18 U.S.C. § 1343. As a result, his sentencing is now scheduled for December 6, 2021. Thus, while this factor may have weighed in favor of the requested stay before Mr. Gilman pleaded guilty, it does not support a further stay of the proceedings in this case.

Defendants, nevertheless, contend that the court should delay ruling on the SEC's Motion because the two cases concern the same investors and losses, such that the loss or restitution amount determined in Mr. Gilman's criminal case will "be used for the disgorgement amount in the SEC case." Defs.' Mot. to Stay 5. Defendants assert that delaying for this purpose will promote judicial economy and avoid duplication of effort in the two cases. The court addresses this argument below in connection with the remaining factors.

### 2. Interests of the SEC, Defendants, the Court, and Public (Remaining Factors)

Regarding the remaining factors involving the interests of the SEC, Defendants, the court, and the public, Defendants again argue that delaying the proceedings in this case will avoid duplication because the loss amount determined in Mr. Gilman's criminal case will be the same as the disgorgement amount in this case and thus can be used for disgorgement purposes in this case. Defendants contend that the interests of the SEC and public in expeditiously resolving the remaining issues in this civil action will not be harmed by a short delay, as Mr. Gilman's criminal case will be concluded in the near future considering the plea agreement entered in that case. Defendants also note that the liability portion of this case has concluded as a result of the Consent Judgments entered against them. Finally, Defendants contend that "there still exists the concern to not violate grand jury secrecy with duplicate efforts" regarding the same activities. Defs.' Mot. 6.

The SEC disagrees with Defendants' logic for several reasons. The SEC contends that Mr. Gilman's criminal case will not likely conclude in the near future because it could be months before Mr. Gilman enters a plea and is sentenced, especially in light of COVID-19. The SEC further contends that a stay would prejudice its substantial rights because, until the court enters a final judgment, it cannot collect funds on behalf of the investors defrauded by Defendants, and, the more time that passes, there is a greater risk that the assets will be dissipated. The SEC asserts that the only potential prejudice to Defendants, according to their motion, is duplication of effort.

At the outset, the SEC notes that no further efforts by Defendants with respect to its Motion will be required because they failed to respond to the Motion, and, pursuant to the Consent Judgments entered in March 2020, they agreed to not contest the allegations in the Complaint for purposes of its Motion. The SEC argues that, even if there is any duplication of effort, it will be

**Memorandum Opinion and Order – Page 9**

minimal because the only issues remaining in this case are the amounts of disgorgement, prejudgment interest, and civil penalties, which will be determined under legal standards applicable to civil cases like this, whereas any restitution ordered in the criminal case will be imposed only against Mr. Gilman and calculated using a different time frame under different legal standards applicable only in criminal cases.

For the reasons essentially asserted by the SEC, the court determines that consideration of the interest factors (factors three through six) do not weigh in favor of further delaying the proceedings in this case now that Mr. Gilman has pleaded guilty and his sentencing has been scheduled. Moreover, if Mr. Gilman believes that he is entitled to a reduction in the restitution ordered in his criminal case because of overlapping disgorgements amounts ordered in this case, he can lodge that argument or objection in his criminal case at sentencing or in response to the presentence investigation report prepared by the probation officer, to the extent doing so would not be inconsistent with his signed Consent or the Consent Judgment previously entered against him in this case. *See United States v. Boyce*, 759 F. App'x 259 & nn.42-43 (5th Cir. 2019) (per curiam) (explaining that "the restitution amount must be reduced by 'the value . . . of any part of the property that is returned' to the victim," and "[t]he defendant has the burden of showing an entitlement to a reduction in restitution owed.") (quoting 18 U.S.C. § 3663A(b)(1)(B)(ii) and citing *United States v. De Leon*, 728 F.3d 500, 506-07 (5th Cir. 2013)).

Accordingly, the court **grants** Defendants' Motion to Stay to the extent that the court decided to delay ruling on the SEC's Motion before now. The court, however, sees no reason to further delay the proceedings in this case.

**Memorandum Opinion and Order – Page 10**

**III.     SEC's Motion**

The SEC seeks the entry of an order and final judgment setting forth the final amounts that Defendants will be required to pay in the form of disgorgement of ill-gotten gains, prejudgment interest, and civil penalties. The SEC requests that disgorgement and prejudgment interest be ordered in the following amounts as to each Defendant:

| Defendant | Final Disgorgement Amount | Prejudgment Interest ("PJI") | Final Disgorgement and PJI |
|---|---|---|---|
| OMG | $351,679.00 | $66,779.01 | $418,458.01 |
| WaveTech | $402,491.50 | $76,427.63 | $478,919.13 |
| GilmanSound | $1,333,130.32 | $253,143.12 | $1,586,273.44 |
| Paul Gilman | $403,993.35 | $76,712.77 | $480,706.12 |
| **Total** | **$2,491,294.17** | **$473,062.53** | **$2,964,356.70** |

Pl.'s Mot. 9. In addition, the SEC requests that the court impose the maximum civil penalty against each Defendant under the Securities Act and Exchange Act. Defendants did not file a response in opposition to the SEC's Motion and, thus, have not contested the disgorgement, prejudgment interest, or civil penalty amounts calculated and requested by the SEC. For the reasons that follow, the court **grants** the SEC's Motion, as it determines that an order of disgorgement and prejudgment interest against each Defendant, together with third-tier penalties in the amount urged is proper because each Defendant admittedly violated the federal securities laws, Defendants have consented to the imposition of civil penalties in an amount to be determined by this court, and the facts of this case are particularly egregious and support the penalty amounts requested by the SEC.

### A. Disgorgement

The SEC seeks to recover disgorgement of funds for purposes of returning those funds to investors who lost significant sums of money when they invested money in Defendants' fraudulent scheme. "Disgorgement wrests ill-gotten gains from the hands of a wrongdoer. It is an equitable remedy meant to prevent the wrongdoer from enriching himself by his wrongs." *SEC v. Huffman*, 996 F.2d 800, 802 (5th Cir.1993) (internal citations omitted). Disgorgement is also meant to deter future violations of the law. *SEC v. Seghers*, 298 F. App'x 319, 336 (5th Cir. 2008) (citations omitted). The SEC is authorized to seek, and the court is authorized to order disgorgement "that does not exceed a wrongdoer's net profits and is awarded for victims." *Liu v. SEC*, 140 S. Ct. 1936, 1940 (2020); *Allstate Ins. Co. v. Receivable Fin. Co., L.L.C.*, 501 F.3d 398, 413 (5th Cir. 2007) (explaining that, "[b]ecause disgorgement is meant to be remedial and not punitive, it is limited to 'property causally related to the wrongdoing' at issue") (citation omitted).

"District courts have broad discretion in calculating the amount to be disgorged. *SEC v. AMX, Int'l, Inc.*, 7 F.3d 71, 73 (5th Cir. 1993). The party seeking disgorgement has the burden of "distinguishing between that which has been legally and illegally obtained." *Receivable Fin. Co.*, 501 F.3d at 413 (citing *SEC v. First City Fin. Corp.*, 890 F.2d 1215, 1231 (D.C. Cir. 1989)). In actions by the SEC involving securities violations, however, "disgorgement need only be a reasonable approximation of profits causally connected to the violation." *Id*. Courts may but are not required to offset legitimate business expenses of securities law violators against their disgorgement liability, and, as a general rule, courts do not allow securities law violators to offset such expenses. *SEC v. United Energy Partners, Inc.*, 88 F. App'x 744, 746-47 (5th Cir. 2004) (per curiam) (citing cases); *see also SEC v. Kahlon*, 873 F.3d 500, 509 (5th Cir. 2017) (quoting *United*

**Memorandum Opinion and Order – Page 12**

*Energy Partners*, 88 F. App'x at 746 for the proposition that "the overwhelming weight of authority hold[s] that securities law violators may not offset their disgorgement liability with business expenses."). Any "risk of uncertainty [in calculating disgorgement] should fall on the wrongdoer whose illegal conduct created that uncertainty." *First City Fin. Corp.*, 890 F.2d at 1232.

The SEC argues for a total disgorgement of $2,491,294.17 as follows: OMG ($351,679); WaveTech ($402,491.50); GilmanSound ($1,333,130.32); and Mr. Gilman ($403,993.35). To support this request, the SEC relies on the allegations in its Complaint, which the court accepts as true, and the declaration of Keith Hunter (Docs. 43 & 43-1 through 43-8).

The court determines that these disgorgement amounts are a reasonable approximation of each Defendant's ill-gotten net profits, and satisfy the criteria set forth in *Liu*. Based on the bank records and other records that the SEC obtained during its investigation, Defendants raised approximately $3.3 million from 36 investors during the five-year period leading up to the filing of the Complaint on June 4, 2018. The total disgorgement amount sought, however, is limited to the proceeds received by the Defendants from the fraud scheme, minus monies returned to investors and used for legitimate expenses. Moreover, Defendants failed to file a response contesting the SEC's Motion and disgorgement calculation. The court, therefore, **concludes** that that a total disgorgement amount of **$2,491,294.17** is an appropriate amount of disgorgement, which **shall** be disgorged by Defendants as follows: **OMG ($351,679); WaveTech ($402,491.50); GilmanSound ($1,333,130.32); and Mr. Gilman ($403,993.35)**.

### B.     Prejudgment Interest

Courts may add prejudgment interest to a disgorgement amount to prevent defendants from benefitting from the use of ill-gotten gains interest-free. *See SEC v. Blatt*, 583 F.2d 1325, 1335 (5th

**Memorandum Opinion and Order – Page 13**

Cir. 1978) ("The court's power to order disgorgement extends only to the amount *with interest* by which the defendant profited from his wrongdoing.") (emphasis added); *SEC v. Gunn*, No. 3:08-CV-1013-G, 2010 WL 3359465, at *2 (N.D. Tex. Aug. 25, 2010) (citing *SEC v. Sargent*, 329 F.3d 34, 40-41 (1st Cir. 2003)). The decision of whether to award prejudgment interest is a matter of the district court's discretion. *See United Energy Partners, Inc.*, 88 F. App'x at 747 (reviewing a district court's award of prejudgment interest on a disgorgement amount for abuse of discretion). In federal securities cases, courts generally calculate prejudgment interest by applying the interest rate used by the Internal Revenue Service ("IRS") for the underpayment of federal income tax as set forth in 26 U.S.C. § 6621(a)(2); *SEC v. First Jersey Secs., Inc.*, 101 F.3d 1450, 1476 (2d Cir. 1996) (approving application of IRS underpayment rate for calculating prejudgment interest on amounts disgorged due to securities violations). This rate of interest "reflects what it would have cost to borrow the money from the government and therefore reasonably approximates one of the benefits the defendant derived from its fraud." *Id.*

The SEC requests prejudgment interest totaling $473,062.53 to be paid by Defendants as follows: OMG ($66,779.01); WaveTech ($76,427.63); GilmanSound ($253,143.12); and Mr. Gilman ($76,712.77). For support, the SEC relies on Mr. Hunter's declaration and his calculation of prejudgment interest applying the IRS underpayment rate to the disgorgement amounts for the period of December 21, 2016, through October 15, 2020. The SEC's Motion was filed on October 21, 2021, and Mr. Hunter explains that investors funds were raised by Defendants between June 5, 2013, and December 21, 2016.

The court determines that Defendants should each be ordered to pay prejudgment interest because it has awarded the SEC disgorgement of Defendants' ill-gotten gains, and Defendants

**Memorandum Opinion and Order – Page 14**

enjoyed the benefits of their victims' money, thereby offending basic principles of justice and equity. *See SEC v. Greenview Inv. Partners, L.P.*, No. 3:18-CV-2349-G, 2020 WL 973750, at *3 (N.D. Tex. Jan. 2, 2020). Based on the evidence presented by the SEC and Defendants' lack of a response contesting the evidence and the SEC's prejudgment calculation, the court **concludes** that that prejudgment interest in the total amount sought by the SEC **($473,062.53)** is appropriate and **shall** be paid by Defendants as follows: **OMG ($66,779.01); WaveTech ($76,427.63); GilmanSound ($253,143.12); and Mr. Gilman ($76,712.77)**.[2]

### C. Civil Penalty

Finally, the SEC contends that imposition of an additional civil penalty under section 20(d) of the Securities Act and section 21(d)(3) of the Exchange Act in an amount to be determined by the court is warranted in this case.

Under Section 20(d)(2)(A) of the Securities Act and Section 21(d)(3)(B) of the Exchange Act, the amount of any civil penalty "shall be determined by the court in light of the facts and circumstances." 15 U.S.C. §§ 77t(d), 78u(d)(3). These statutes set out a three-tier penalty structure that provides increasing penalty amounts based on the severity and egregiousness of the defendant's conduct and securities law violations. *See* 15 U.S.C. §§ 77t(d), 78u(d)(3), and 17 C.F.R. 201.1001; *SEC v. Blackwell*, No. 3:11-CV-234-L, 2012 WL 13564, at *4 (N.D. Tex. Jan. 4, 2012).

---

[2] The court does not award prejudgment interest for the period of delay between the filing of the SEC's Motion and the court's ruling on that motion.

**Memorandum Opinion and Order – Page 15**

A first-tier penalty can be imposed for any violation of the Securities Act or Exchange Act without any evidence of scienter. *SEC v. Reynolds*, No. 3:08-CV-438-B, 2013 WL 3479825, at *4 (N.D. Tex. July 11, 2013). A second-tier penalty can be imposed upon a showing that that the violation "involved fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement." 15 U.S.C. §§ 77t(d), 78u(d)(3). Finally, a third-tier penalty is appropriate when, in addition to the showing of fraud, the violation "directly or indirectly resulted in substantial losses to other persons." *Id*.

Under both Acts, the maximum penalty that can be awarded is the greater of the gross amount of pecuniary gain to the defendant as a result of the violations or the amount set by statute. *Id.* The maximum statutory penalty amounts per violation in effect during the relevant time period are as follows:

| Penalty Tier | For Natural Person | For Any Other Person |
|---|---|---|
| First Tier, for any violation | $7,500 | $80,000 |
| Second Tier, for fraud | $80,000 | $400,000 |
| Third Tier, for fraud involving substantial losses or risk of losses to others or gains to self | $160,000 | $775,000 |

*See* 17 C.F.R. § 201.1001, Table 1.3.

The following five factors are often considered by courts in determining whether such a penalty should be imposed: (1) the egregiousness of the defendant's conduct; (2) the degree of scienter; (3) whether the conduct created substantial losses or the risk of substantial losses to other persons; (4) whether the conduct was isolated or recurrent; and (5) the cooperation of the defendant with law enforcement authorities. *SEC v. Amerifirst Funding*, Inc., No. 3:07-CV-1188-D, 2008 WL 1959843, *7 (N.D. Tex. May 5, 2008) (citing *SEC v. Opulentica*, 479 F. Supp. 2d 319, 331 (S.D.N.Y. 2007)).

The SEC contends that the court should assess a third-tier penalty against each Defendant because Defendants have already consented to the imposition of civil penalties in an amount to be determined by the court, and consideration of the facts of this case and factors referenced above warrant imposition of third-tier penalties. For support, the SEC relies on the facts alleged in its Complaint and the declaration of Mr. Hunter and asserts that the civil penalties as to each Defendant should be calculated as follows:

> Counting one violation against Gilman for each of the 36 investors, for example, yields a penalty amount of $5,760,000 ($160,000 x 36 investors), if the [c]ourt orders the maximum third-tier penalty per violation. Counting one violation against OMG for each of the at least three OMG investors yields a penalty amount of $2,325,000 ($775,000 x 3 investors). Counting one violation against WaveTech for each of the at least seven WaveTech investors yields a penalty amount of $5,425,000 ($775,000 x 7 investors). Counting one violation against GilmanSound for each of the at least 18 GilmanSound investors yields a penalty amount of $13,950,000 ($775,000 x 18 investors).

Pl.'s Mot. 13 (footnote omitted). The SEC explains that:

> Of the 36 unique investors, there are at least three OMG investors, seven WaveTech investors, 18 GilmanSound investors, and 12 investors on behalf of any one of Gilman's three offerings and whose funds were commingled into Gilman's personal accounts and are not specifically associable with one of the offerings. This totals to 40, because four of the 36 unique investors invested in more than one offering.

*Id*. & n.5 (citing Pl.'s App. 3-4, Hunter Dec. ¶ 7).

Alternatively, the SEC requests that the court order Defendants to pay penalties "equal to the *gross* amount of their pecuniary gain, which would be equal to the investor funds received by each Defendant before deductions for potential legitimate expenses and funds returned to investors" as follows: "OMG ($381,500.00); WaveTech ($765,000.00); GilmanSound ($1,689,800.70); and Gilman ($458,513.34)." *Id.* (citation and footnote omitted).

**Memorandum Opinion and Order – Page 17**

The court agrees that a third-tier penalty is warranted here. Defendants acted egregiously and participated in activities that involved fraud, deceit, and manipulation in clear disregard of federal security laws. Defendants' scheme, as orchestrated by Mr. Gilman, involved knowingly misleading investors to obtain large financial investments that Defendants comingled and misappropriated for their own personal use and benefit, and they have not come forward with information for the court's consideration regarding their current financial condition in response to the SEC's Motion. Regardless, the court could impose a civil penalty even if it determined that Defendants were unable to pay it. *SEC v. Allen*, No. 3:11-CV-882-O, 2012 WL 5986443, *2-3 (N.D. Tex. Nov. 28, 2012); *SEC v. Harris*, No. 3:09-CV-1809-B, 2012 WL 759885, *5 (N.D. Tex. Mar. 7, 2012) (citing *SEC v. Warren*, 574 F.3d 1368, 1370 (11th Cir. 2008)).

Moreover, Defendants' deceptive conduct and scheme continued for several years and resulted in substantial losses to investors. Additionally, while Defendants agreed that the court would accept as true the allegations in the SEC's Complaint for purposes of the SEC's Motion, none has admitted any wrongdoing for purposes of this civil action, and Mr. Gilman only recently entered a guilty plea in his related criminal case. Defendants also failed to respond to the SEC's Motion or contest its request for third-tier penalties. The court, therefore, **concludes** that the maximum penalty requested by the SEC is appropriate under the circumstances and **assesses** third-tier civil penalties against each Defendant as follows: **Mr. Gillman ($5,760,000); OMG ($2,325,000); WaveTech ($5,425,000); and GilmanSound ($13,950,000).**

IV.   **Conclusion**

For the reasons explained, Defendants' Motion to Stay (Doc. 44) is **granted in part and denied in part**. The Motion to Stay is **granted** to the extent that the court decided to delay ruling

on the SEC's Motion before now in light of Mr. Gilman's criminal case. The Motion to Stay is **denied** to the extent Defendants seek a further stay because the court sees no reason to continue to delay the proceedings in this case or its ruling on the SEC's Motion (Doc. 42), which is **granted** to the extent that Defendants **shall** pay the following amounts to the SEC, and the court will enter a final judgment as requested by the SEC:

| Defendant | Disgorgement | Prejudgment Interest | Civil Penalties | Total |
|---|---|---|---|---|
| OMG | $351,679 | $66,779.01 | $2,325,000 | **$2,743,458.01** |
| WaveTech | $402,491.50 | $76,427.63 | $5,425,000 | **$5,903,919.13** |
| GilmanSound | $1,333,130.32 | $253,143.12 | $13,950,000 | **$15,536,273.50** |
| Paul Gilman | $403,993.35 | $76,712.77 | $5,760,000 | **$6,240,706.12** |

A final judgment against Defendants will issue by separate document as required by Federal Rule of Civil Procedure 58.

**It is so ordered** this 9th day of September, 2021.

Sam A. Lindsay
United States District Judge